

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 25, 2024**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| WILLIAM GLENN JOHNS, | § | Case No. 21-60010-rlj7 |
| | § | |
| Debtor. | § | |
| _____ | § | _____ |
| | § | |
| DAVID RUTAN and MICHELLE | § | |
| RUTAN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary No. 22-06000 |
| | § | |
| WILLIAM GLENN JOHNS, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court issues its findings of fact and conclusions of law on the action by plaintiffs

David and Michelle Rutan against defendant William Glenn Johns. Trial was held on November

30, 2023, December 1, 2023, and December 5, 2023. Upon conclusion of the trial, the parties

1

were given permission to submit post-trial briefs. The matter was taken under advisement after submission of the post-trial briefs.

The Court's findings and conclusions are based upon the record before the Court and are issued under Rule 52 of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

For the reasons that follow, the Court denies the Rutans' causes of action under § 727 of the Bankruptcy Code.[1]

## FINDINGS OF FACT

1.      William Glenn Johns filed his voluntary chapter 7 petition on February 3, 2021. Case No. 21-60010, ECF No. 1.[2] Johns is single and has no dependents.

2.      Plaintiffs David and Michelle Rutan are individuals residing in Clark County, Washington. The Rutans are creditors of Johns's. Roddrick B. Newhouse is the chapter 7 trustee (Trustee) of Johns's bankruptcy estate. The Rutans filed this adversary proceeding objecting to Johns's discharge under 11 U.S.C. § 727 on February 27, 2022. Adv. No. 22-06000, ECF No. 1. The Trustee is not a party to this proceeding.

### Bankruptcy Schedules and Statement of Financial Affairs

### Original Schedules

3.      Johns's Schedules show an individual with one asset of value—an IRA valued at approximately $250,000—and virtually nothing else other than typical household items valued around $5,000. Case No. 21-60010, ECF No. 1 at 9–15. In Schedule A/B, Johns states he does not own or have any "legal or equitable interest in any residence, building, land, or similar

---

[1] "Section" or "§" refers to 11 U.S.C., the Bankruptcy Code, unless otherwise stated.
[2] "ECF No." refers to the numbered docket entry in the Court's electronic case file for the indicated case number or adversary proceeding number.

property." *Id*. at 9. Johns's Schedules contain minor contradictions. Schedule A/B, Part 2 states

he does not lease any vehicles; in Schedule G, however, Johns states he leases a vehicle from

Terrell Sheen,[3] and his Statement of Financial Affairs specifies he makes a monthly truck

payment to Terrell Sheen. *Id*. at 9, 26, & 38.

4.      Johns's Schedules I and J reflect that his monthly income as a self-employed

property manager is $1,500 (with no documented deductions) and his monthly expenses are

$2,742.97, leaving him short $1,242.97 each month. *Id*. at 28–32. According to his Schedules,

Johns's expenses consist of home maintenance, utilities (specifically of the category involving

"telephone, cell phone, internet, satellite, and cable services"), food and housekeeping supplies,

clothing and laundry, personal care products, medical expenses, transportation, entertainment,

charitable contributions, vehicle insurance, vehicle lease payments, and a small amount for gifts

and haircuts. To resolve the shortfall between his income and his expenses, Johns explained that

his "expenses are almost entirely paid by a company or individual he is working for as property

manager." Johns's Answer ¶ 10 [Case No. 22-06000, ECF No. 8].

5.      Johns testified that he serves as trustee and property manager of various entities

owned or controlled by others—mainly Terrell Sheen. This arrangement is discussed more in

depth below and extensively in the Court's Memorandum Opinion granting the Trustee's and

Rutans' objection to Johns's exemption. *See infra* note 5, Finding 22, Conclusion 24; *see also In

re Johns*, 658 B.R. 401, 403–09 (Bankr. N.D. Tex. 2024), *appeal docketed*, No. 6:24-cv-024-H

(N.D. Tex. filed April 9, 2024).

6.      Johns's Statement of Financial Affairs discloses two bank accounts as property

that he "holds or controls" but someone else owns. Case No. 21-60010, ECF No. 1 at 41. One

---

[3] For clarification, the leased vehicle should have been listed in *both* Schedule A/B and Schedule G, as indicated on
the form.

account is owned by TSU Control, LLC; the other is owned by A Trust Services Trust. *Id*. Johns

is the "signer" on these two accounts that he manages for Terrell Sheen. *Id*.

7.      In his original filings, Johns failed to disclose many land trusts for which he is the

named trustee.

### Subsequent Filings in Johns's Bankruptcy Case

8.      After the Rutans filed this adversary proceeding, Johns filed amendments to his

Schedules and Statement of Financial Affairs. And in a related adversary proceeding initiated by

the Trustee against parties associated with Johns, the Court, on February 9, 2023, ordered Johns

to file a schedule of the assets and liabilities of his IRA. Adv. No. 22-06001, ECF No. 28. Johns

filed this schedule in the adversary proceeding and in his bankruptcy case on February 24, 2023.

Case No. 21-60010, ECF No. 208; Adv. No. 22-06001, ECF No. 33. Johns then amended this

schedule on May 9, 2023. Case No. 21-60010, ECF No. 295.

9.      Johns amended his required bankruptcy Schedules A/B and G and Statement of

Financial Affairs on October 30, 2023, over two-and-a-half years *after* his bankruptcy filing.

Case No. 21-60010, ECF Nos. 373, 374. The amendments to his Schedules include his vehicle

lease, his explanation of how he valued his IRA, and a list of the various trusts for which he is

the named trustee. *Compare* Schedule A/B at 1, 3, 4 [Case No. 21-60010, ECF No. 1]; Amended

Schedule A/B at 1, 4 [Case No. 21-60010, ECF No. 373].

10.      The amended Schedule G concerns executory contracts. There Johns discloses

that he is named "as Trustee in numerous personal service contracts with Dr. Terrell Sheen, his

family, or legal entities as part of his property management business, including…those trusts

listed [in the attached exhibits]….The Debtor has no equitable or legal interest in the trusts or the

corpus, or income of the trusts. The trusts are sometimes called Illinois Land Trusts. Dr. Terrell

Sheen uses these trusts to purchase real estate in order to avoid probate in regard to the properties

and avoid public knowledge of his assets. In most cases a separate trust is formed to hold each

property. When…Sheen sells a property, he directs the Debtor as Trustee to manage the sale, the

proceeds are then distributed to the beneficiaries and the trust is terminated." Am. Schedule G

[Case No. 21-60010, ECF No. 373]. Johns cross-references this entry to amend his Statement of

Financial Affairs where it asks the debtor to identify the trusts of which he is named as trustee.

Am. Statement of Fin. Affairs [Case No. 21-60010, ECF No. 374].

11.     The above amendments provide Johns's explanation that he holds no beneficial

interest in the trust's properties.

12.     Johns contends the amendments resolve any failure of transparency on his part.

**Johns's Financials**

13.     Johns's financial circumstance, as outlined in his original bankruptcy Schedules,

is confounding.

14.     To begin, Johns is an experienced real estate investor and property manager. By

his telling, he faced substantial financial difficulties in 2008—he apparently had no housing at

times and had to sleep in his truck or at his sister's home. He does not, and has not since 2008,

owned a bank account or credit card in his name. (While Johns contests this, his former girlfriend

may have issued a credit card from her account in his name.)

15.     Johns's financial prospects apparently improved with the help of his friend,

Terrell Sheen. Johns and Sheen have had an arrangement of some sort for several years. Johns

was described as the "bird dog" with a talent for finding properties and businesses to acquire.

The two reached an arrangement whereby Johns would work for Sheen in various capacities, the

details of which are elusive. Their relationship goes back over twenty years. *See* Rutan Exs. 93 & 94.

16.     At the time Johns filed bankruptcy, Sheen was paying him $1,500 per month, which Johns testified provided him with the security of having stable income. Not included in the monthly payment, however, are "business expenses" that are "reimbursed" to Johns by Sheen or one of his entities—in explaining his financial situation, Johns routinely differentiated between income and reimbursed "business expenses."

17.     As reflected in his bankruptcy filings, Johns's only real asset of value is his self-directed Roth IRA, which he values at approximately $250,000. The IRA is multi-tiered and invests with Sheen, Sheen's entities, and Sheen's family members (or Sheen-affiliated entities) in various business opportunities. The first level of the IRA's investments are two trusts—Carswell Cherokee Trust and Southeast Financial Trust. (Neither trust was mentioned in Johns's original Schedules as held by his IRA.)

18.     The trustee of Carswell Cherokee Trust is Brian Anderson, but another person, Shannell Smith, manages a portion of the trust's properties. And a "Texas office"—ostensibly referring to Sheen or others who work closely with him—manages other properties held in the Carswell Cherokee Trust. The beneficiaries of Carswell Cherokee Trust are Johns's IRA, Terrell Sheen's IRA, and Cathy Sheen's (Terrell Sheen's wife) IRA. Carswell Cherokee Trust is primarily invested in real estate, mobile homes, and fixtures for the mobile homes.

19.     Smith manages Carswell Cherokee Trust through American Management Trust, which was initially represented to the Court as her own company but, in actuality, is nothing more than a name of a bank account that she controls. Smith pools together funds from multiple sources into the American Management Trust account, including income from Carswell

Cherokee Trust. The allocation of funds was purportedly tracked via a spreadsheet, although it is impossible to reconcile and account for the funds flowing into and out of the account from the spreadsheet provided to the Court. *See* Johns Ex. 35 (Carswell Cherokee Trust is notably missing from the spreadsheet).

20.     As for Southeast Financial Trust, Shannell Smith serves as its trustee. Johns's IRA is the sole beneficiary of Southeast Financial Trust, which is invested in real estate and the portable toilet business.

## The Rutans

21.     The Rutans, or entities of the Rutans, are the principal creditors in Johns's bankruptcy case. (The present holder of the debt may be in dispute but, regardless, the debt originates with the Rutans.) Johns and the Rutans met through a business deal where they swapped properties. After the swap occurred, the deal apparently turned ugly. In Johns's telling, he ended up in jail and the Rutans left with both properties and two judgments, each obtained in 2013 against Johns in a total amount exceeding $2 million.[4] David Rutan signed a third proof of claim for an entity named Integral 4RMT, LLC for an amount exceeding $1.6 million that is based on a judgment awarded in 2010. The Rutans, to put it mildly, have aggressively pursued collection of the judgment. Johns presented evidence of previous lawsuits brought by the Rutans, including: fake letters they sent to tenants of properties owned in part by Johns's IRA; a phone call where David Rutan pretended to be an accountant; a text to *Johns's sister's* pool cleaning company asking for information on Johns; and an email where David Rutan calls Johns a "joke"

---

[4] The Rutans filed two proofs of claim: one claim in the amount of $1,948,306.09 based on a judgment in the amount of $1,088,855.64 issued in Montana on March 12, 2013; the other claim is in the amount of $1,927,423.92 based on a judgment in the amount of $1,088,855.64 issued in Orange County, Texas on May 23, 2013. Case No. 21-60010, Claim Nos. 5-2 and 6-1.

and then claims "[t]he day will come when the world will come down on [Johns]." Johns Exs. 31, 32, 64, 67, & 74.

22.     Prior to Johns's bankruptcy filing, the Rutans sued Johns for RICO violations. Johns Ex. 31. In support of those charges, the Rutans listed 134 trusts of which Johns is affiliated as the trustee. Johns Ex. 31 at 126–129. Likewise, in a lawsuit brought against Johns in 2019, the plaintiffs there list five pages of trusts of which Johns was allegedly the trustee. Johns Ex. 31 at 85–89. Johns's original bankruptcy Schedules make no mention of any of these trusts. Johns submits that he had no need to hide the trusts from the Rutans as they already had knowledge that he was the named trustee of dozens of trusts. Regardless, Johns wholly failed to disclose these affiliations in his original bankruptcy Schedules and such non-disclosure lasted until Johns amended his Schedules in October 2023. *See supra* Findings 9–10.

### Objection to Discharge

23.     The Rutans object under §§ 727(a)(2)(A) and (B), 727(a)(3), and 727(a)(4) to Johns's receipt of the discharge. They allege that Johns's concealment and non-disclosure of properties should render all his debts nondischargeable. Johns maintains he has been forthright in his bankruptcy filings and has disclosed all properties that constitute his bankruptcy estate which, assuming the validity of his exemption claims, would render his case a "no-asset" case with no assets to administer by the Trustee for the benefit of creditors. But as referenced above, at Finding 5, Johns's exemption claim has been denied.

### CONCLUSIONS OF LAW

### Jurisdiction

1.     The Court has jurisdiction of this case and this proceeding under 28 U.S.C. §§ 1334(b), 157(a), and the Northern District of Texas's Order of Reference of Bankruptcy Cases

and Proceedings Nunc Pro Tunc, Misc. Order 33. This matter is a core proceeding under 28

U.S.C. § 157(b)(2)(J).

### Discharge

2.       The Bankruptcy Code requires a discharge be granted the debtor unless one of the

statutory grounds for denial of discharge is proven. 11 U.S.C. § 727(a); *see Simmons v. Bohanna

(In re Bohanna)*, No. 18-4065, 2019 WL 7580173, at *8, 2019 Bankr. LEXIS 3594 (Bankr. E.D.

Tex. Nov. 15, 2019). Denying a debtor's discharge is an extreme remedy. *Pher Partners v.

Womble (In re Womble)*, 289 B.R. 836, 845 (Bankr. N.D. Tex. 2003) (citing *Rosen v. Bezner*, 996

F.2d 1527, 1531 (3d Cir. 1993)). Only "very specific and serious infractions" warrant denying

discharge. *Martin Marietta Materials Sw., Inc. v. Lee (In re Lee)*, 309 B.R. 468, 476 (Bankr.

W.D. Tex. 2004) (citing *Ichinose v. Homer Nat'l Bank (In re Ichinose)*, 946 F.2d 1169, 1172 (5th

Cir. 1991)).

3.       "The exceptions [to discharge] are construed strictly against the creditor and

liberally in favor of the debtor." *Laughlin v. Nouveau Body & Tan, L.L.C. (In re Laughlin)*, 602

F.3d 417, 421 (5th Cir. 2010) (alterations in original) (quoting *Cadle Co. v. Duncan (In re

Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009)).

4.       The party objecting to the debtor's discharge under § 727 must satisfy their

burden by a preponderance of the evidence. *In re Duncan*, 562 F.3d at 695; *Mullen v. Jones (In re

Jones)*, 445 B.R. 677, 722 (Bankr. N.D. Tex. 2011).

### Section 727(a)(2)(A)

5.       "The court shall grant the debtor a discharge, unless…the debtor, with intent to

hinder, delay, or defraud a creditor or an officer of the estate…transferred, removed, destroyed,

mutilated, or concealed…property of the debtor, within one year before the date of the filing of

the petition[.]" § 727(a)(2)(A). "In order to deny discharge, the statute requires that four elements be proven: (1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989) (referencing *In re Reed*, 18 B.R. 462 (Bankr. E.D. Tenn. 1982)). Harm to a creditor is not an element of § 727(a)(2). *See Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000).

6.      *First*, the Rutans charge Johns with concealing various properties at issue. The specific properties that the Rutans allege Johns concealed fall into four somewhat ill-conceived categories: (1) properties held by Johns in trust (but not properties held in his IRA through the Carswell Cherokee Trust and the Southeast Financial Trust); (2) the assets of Johns's IRA and their value; (3) Johns's income; and (4) his alleged beneficial interest in trusts.[5] *See* Rutans' Trial Br. [Adv. No. 22-06000, ECF No. 71].

7.      Johns argues he could not conceal the properties that were held in trust when the Rutans had actual and constructive knowledge of those properties. He says the Rutans' actual knowledge is evidenced by their filings in a Georgia state court action that list properties they allege Johns held in trust. The Rutans' constructive knowledge derives from the fact that the property transactions are part of the public real property records. *See Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981).

8.      Johns listed his IRA and an estimate of its value in his Schedules. The Trustee was permitted to inquire into its value and successfully objected to its exemption. *See generally In re*

---

[5] The properties listed in the complaint are as follows: seventy-two real properties for which Johns is listed as trustee in appraisal district records; Carswell Cherokee Trust and Southeast Financial Trust and the trust assets; more real properties which do not list a trustee but list the owner's address as the same address for the properties of which Johns is the trustee; and twenty-one separately identified trusts in which the Rutans believe Johns has some interest. The Rutans also claim Johns has a beneficial interest in A Trust Services Trust, an entity owned by Sheen. The basis for that contention is that Johns made contradicting statements regarding his relationship to A Trust Services Trust—the inference being that he concealed income. Am. Comp. ¶¶ 96, 99, 100, 103, 105 [Adv. No. 22-06000, ECF No. 23].

*Johns*, 658 B.R. 401 (Bankr. N.D. Tex. 2024), *appeal docketed*, No. 6:24-cv-024-H (N.D. Tex.
filed April 9, 2024).

9.      Johns's original Schedules did not disclose the many trusts (and properties held in
such trusts) for which he purportedly serves as the named trustee.

10.      As stated, the Court ordered Johns to prepare and file a schedule of assets and
liabilities for his IRA and for each of the trusts in which the IRA holds an interest and that he
certify to the truth and accuracy of the schedule. *See supra* Finding 8. Johns had Shanell Smith
prepare the schedule.

11.      The schedule reveals that the hard assets of the Carswell Cherokee Trust, of which
Johns's IRA holds a 49% interest, are dozens of mobile homes, mobile home lots, other small
real estate tracts (land only); rental contracts; an office building; and one listing of "apartments."
All the properties are located in Georgia. Amended Schedule of Assets and Liabilities of
Debtor's NuView IRA [ECF No. 295]. The Amended Schedule of Assets and Liabilities prepared
by Shannell Smith states that the contract balances, which the Court construes as receivables, are
just over $3.9 million, while the aggregate value of the "land" is $815,613. The total gross value,
therefore, is $4.78 million for *both* the Johns IRA's and the Sheens' IRAs interests in Carswell
Cherokee Trust. The debt against these assets is almost $2 million. For Southeast Financial Trust,
which is much simpler, the schedule reflects a gross value of $597,000 and debts of $293,000; it
then states the "Total Balance Value Net" is $304,594. But assessing a value from balances under
rented mobile homes is speculative at best. The rentals turn over constantly and offer little
predictability, and they frequently require maintenance and repairs. The market value for a sale
of such assets is far less than any value determined from an assessment of the assets and
liabilities.

12.     The charge that Johns concealed his status as a "beneficiary" of the originally
undisclosed trusts is misplaced and non-persuasive.[6] No evidence beyond payments from those
trusts was provided to indicate Johns was (or is) a beneficiary, and those payments were
explained as income for the work he performed for those trusts or for Sheen. The Rutans'
suspicions do not impact the analysis. Further, Johns testified that for the undisclosed "trusts" he
was merely a label—a name and a signature—and nothing more. He credibly testified this
designation was of Sheen's doing and *for his* (*Sheen's*) convenience. The investments made for
Johns's IRA are a small part of Sheen's complicated investment scheme.

13.     *Second*, the concealed property must be "property of the debtor." § 727(a)(2)(A).
As to the many trusts of which Johns serves as trustee, the question is whether Johns's interest as
a trustee means that property is "of the debtor" and whether Johns had the duty to disclose the
property. The answer to the second inquiry is yes. The Schedules ask debtors to list any "legal or
equitable title" they hold, and even if being a named trustee for some very limited purpose
does not clearly require an affirmative answer to the question, the Statement of Financial Affairs
clearly does: "Do you hold or control any property that someone else owns? Include any
property you…hold in trust for someone." *See, e.g.*, Case No. 21-60010, ECF No. 1 at 9–15, &
41. At the very least, the trusts should have been disclosed in the Statement of Financial Affairs;
Johns cannot seriously contend that he, as named trustee, was not obligated to disclose the trusts.
Johns's explanation that he was nothing more than a "name and signature" for the trusts and thus
his role as a trustee was, he contends, of little substance is not a satisfactory response. The debtor
has a duty to disclose so that interested parties can, at the very least, make further inquiry and
their own determination.

---

[6] The trusts discussed here are not related to the Carswell Cherokee Trust or the Southeast Financial Trust.

14.     *Third*, the Rutans' allegations of concealment of property focus on Johns's bankruptcy Petition and Schedules. He necessarily completed his Schedules before he filed his Petition but not more than one year before filing his Petition.

15.     *Fourth*, intent: if the concealment was made with the intent to hinder, delay, or defraud, the Court should not grant a discharge. § 727(a)(2). "[E]vidence of actual intent to defraud creditors is required to support a finding sufficient to deny a discharge. Constructive intent is insufficient." *Pave v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989) (quotation marks and internal citation omitted). "[A]ctual intent...may be inferred from the actions of the debtor and may be shown by circumstantial evidence." *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701–02 (5th Cir. 2003) (second alteration in original) (quoting *In re Chastant*, 873 F.2d at 91).

16.     Factors that aid courts in processing the circumstantial evidence of actual intent, as identified by the Fifth Circuit, are:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*In re Chastant*, 873 F.2d at 91. Factors five and six apply here; the first three factors do not; factor four applies to the extent Johns's IRA is the "transaction" at issue. Johns acquired his IRA and filed this bankruptcy after the Rutans obtained judgments against him. *See supra* Finding 21.

17.     The relevant considerations are whether Johns failed to disclose his role as trustee of numerous trusts, ostensibly for the benefit of others, and whether he misstated his income.

18.     Johns's way-late amendments to his schedules provided a list of trusts of which

he is the trustee; Johns did not benefit by concealing these properties, nor is it likely creditors

would have been better off with knowledge of these trusts. But Johns and those that benefit from

the trusts have, throughout the bankruptcy, been reluctant to show their hand—these actions have

resulted in costly litigation. This leads to a situation where the debtor is arguably hiding assets

for another party. Full disclosure from the outset would have helped, but whether it would have

led to the discovery of additional assets is unclear. It is not, however, materiality but *intent* that is

at issue. This strange, unexplained system for holding property indicates an intent to conceal the

ownership of the properties; this concealment, however, is for the true "beneficiaries" of these

trusts.

19.     As for his income, Johns differentiated between his income and reimbursed

"business expenses." On the face of his Schedule J, he shows a negative monthly net income of

$1,242.97. Case No. 21-60010, ECF No. 1 at 32. And as Johns explains, his expenses are

reimbursed principally by Sheen as, presumably, *Sheen's* business expenses. Johns's method of

accounting for income and expenses, if he has a method, was not provided. This point is

underscored by his having funded his IRA at a time he had, per his tax returns, *less annual*

*income* than the amounts ($6,500 in 2016, $6,500 in 2017, and $6,000 in 2018) he paid-in to his

IRA. Also, two-plus years *after his bankruptcy filing*, Johns amended his tax returns to add the

*exact amount* of his IRA contributions as additional income. Johns misstated and, in effect, hid

his true income. The Court is skeptical that Johns has reported his actual income by simply

adding the amounts of his IRA contributions for each of the three years he made them.

20.     Johns's sole income as reflected in his Schedules is the monthly $1,500 he was

and is still paid by Sheen (or a Sheen entity). Such a sum is clearly not sufficient to support

Johns. Johns testified that he is also paid by Sheen for various other work or favors he does at

Sheen's behest. He explained that such payments are business expenses. But he wholly failed to

explain how such amounts are *not* income. Johns has no bank account or charge cards. He uses

funds of others, apparently, for anything he does for Sheen. Then Sheen reimburses *him*. Johns's

statement that he makes only $1,500 a month income is not plausible. There is no evidence that

Johns maintains any accounting, in any form, of these "reimbursements."

    21.    The problem, however, is that § 727 specifically concerns the debtor's *property*; it

does not specifically address income. *See* §§ 727(a), 541(a)(1). Johns's failure to accurately state

his income is problematic and indicative of his (and Sheen's) penchant to hide their financial

affairs. The Court concludes, however, that these failures do not implicate § 727(a)(2)(A) nor do

they constitute the "specific and serious infractions" that warrant a denial of discharge. *See

Ichinose v. Homer Nat'l Bank (In re Ichinose)*, 946 F.2d 1169, 1172 (5th Cir. 1991).

**Section 727(a)(2)(B)**

    22.    Under § 727(a)(2)(B), the analysis shifts from the debtor's pre-petition

concealment of property to the debtor's post-petition concealment of estate property. "The court

shall grant the debtor a discharge, unless…the debtor, with intent to hinder, delay, or defraud a

creditor…has transferred, removed, destroyed, mutilated, or concealed…property of the estate,

after the date of the filing of the petition." § 727(a)(2)(B).

    23.    The Rutans' allegations do not draw a clear distinction between Johns's pre-filing

and post-petition conduct. The Court notes, however, that when questioned about the assets and

value of his IRA, Johns routinely denied having any knowledge of the specifics and stated that

either Shannell Smith or the "Texas office" would have the answers. This was while Johns

claimed his IRA as exempt from the bankruptcy estate. The Court has denied Johns's exemption

claim. Upon the Court's order, Johns provided information regarding the assets and liabilities of his IRA. For this, Johns had Shanell Smith prepare the schedule of his IRA's assets and liabilities. *See supra* Conclusion 11. Johns's bankruptcy Schedules failed to provide a clear picture of the assets of his IRA. He listed only the "NuView IRA" with a value of $250,000. This does not provide meaningful information concerning the assets within his IRA or their value. But, importantly, the Court cannot conclude that such listing was technically incorrect. Johns's IRA was obviously thoroughly vetted through the Rutans'/Trustee's exemption challenge. The Court cannot conclude that Johns's misstatements of income rise to the level of a "very specific and serious infraction" sufficient to warrant denial of discharge. *See In re Ichinose*, 946 F.2d at 1172.

24.     Likewise, for the trusts of which Johns serves as trustee, Johns stated that Sheen occasionally named him as trustee without his knowledge. And, apparently, to identify what Johns is the trustee of, he must ask the "Texas office" for a list. It is impossible to conceal what is unknown, but Johns knew he was the named trustee of properties for Sheen; waiting years *after* his chapter 7 case was filed to disclose the properties is too long. That said, Johns testified that Sheen merely labeled properties as a trust and used Johns's name as the trustee. At most, Johns held legal title but no equitable interest. *See* § 541(d). But even this is questionable given Johns's testimony that he was nothing more than a name and a signature. Johns's too-late disclosure of the labeled trusts does not satisfy the grounds for denying discharge under § 727(a)(2)(B).

## Section 727(a)(3)

25.     Under § 727(a)(3), a debtor is denied discharge when "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including

books, documents, records, and papers, from which the debtor's financial condition or business

transactions might be ascertained, unless such act or failure to act was justified under all of the

circumstances of the case." 11 U.S.C. § 727(a)(3).

26.     Debtors are not required to maintain a "full detail" of financial records, but the

records should be "written evidence" of the debtor's financial condition. *Cadle Co. v. Duncan (In

re Duncan)*, 562 F.3d 688, 697 (5th Cir. 2009) (quoting *Robertson v. Dennis (In re Dennis)*, 330

F.3d 696, 703 (5th Cir. 2003)). The reasoning is that "courts and creditors should not be required

to speculate as to the financial history or condition of the debtor, nor should they be compelled to

reconstruct the debtor's affairs." *In re Juzwiak*, 89 F.3d 424, 428 (7th Cir. 1996).

27.     For the § 727(a)(3) analysis, the Fifth Circuit requires that the plaintiff satisfy an

"initial burden of production—that the debtor's failure to produce adequate records makes it

impossible to discern his financial status—[then] the debtor must prove the inadequacy is

'justified under all the circumstances.'" *In re Duncan*, 562 F.3d at 697 (quoting *In re Dennis*, 330

F.3d at 703).

28.     Johns's chapter 7 bankruptcy case has now spanned over three years. It is clear

that Sheen has extensive holdings and that Johns is extensively involved in Sheens' business

affairs. The complexity of Johns's financial affairs is tied-up in his IRA, the arrangement of

which also implicates Sheen. Johns's involvement in those entities is perplexing and

undocumented. The beneficiary of the overall scheme is unclear to the Court; it is not Johns,

apparently. Again, the question is whether the sheer complexity of *Sheen's* affairs—and Johns's

involvement—is sufficient to implicate a § 727(a)(3) failure-to-maintain records exception to

discharge. The evidence shows that the bookkeeping of Shannell Smith is problematic. For

example, to describe the inflow and outflow of money from an account (American Management

17

Trust) which holds income from an asset of Johns's IRA (Carswell Cherokee Trust) and various

other entities, Shannell Smith provided a spreadsheet, but the spreadsheet fails to account for

Carswell Cherokee Trust funds. Johns Ex. 35.

29.     Johns's basic failure is that he has no bank account or credit card. He lives week-

to-week and typically out of his pocket. As stated, his schedules reveal no assets of value, save

for his IRA. His Schedules reflect his adopted, simplified lifestyle.

30.     Shanell Smith testified[7] and provided records. Johns has no records. On their

objection to Johns's exemption of the IRA, the Rutans and the Trustee were able to scrutinize

Shannell Smith's records and find several areas of concern.

31.     But, again, Johns is not the person that maintains the records. Simply stated,

Johns has few, if any, financial records. He provided his tax returns. Given Johns's circumstance,

the Court cannot conclude that Johns's failure to hold a bank account or even a credit card is

sufficient to block his discharge under § 727(a)(3).

### Section 727(a)(4)

32.     Under § 727(a)(4)(A), a discharge will not be granted if the debtor knowingly and

fraudulently made a false statement in connection with the case. "To establish a false oath under

this section, the creditor must show that '(1) [the debtor] made a statement under oath; (2) the

statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the

statement with fraudulent intent; and (5) the statement related materially to the bankruptcy

case.'" *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005) (alterations in original)

(quoting *In re Beaubouef*, 966 F.2d 174, 179 (5th Cir. 1992)). Additionally, omissions can satisfy

---

[7] Shannell Smith testified during the trial on the Trustee's and Rutans' objection to Johns's exemption claim. She did not testify at the trial on this matter.

§ 727(a)(4)(A) when the omissions are knowing and fraudulent. *See* 6 COLLIER ON BANKRUPTCY

¶ 727.04 (16th 2024); *In re Beaubouef*, 966 F.2d 174.

33.     Unlike § 727(a)(2)(A), the debtor need not intend to defraud a creditor or officer

of the estate; "[§] 727(a)(4) does not so limit the objects of the debtor's fraudulent intent." 6

COLLIER ON BANKRUPTCY ¶ 727.04 (16th 2024). "Circumstantial evidence may be used to prove

fraudulent intent, and the cumulative effect of false statements may, when taken together,

evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent." *In

re Duncan*, 562 F.3d at 695 (internal citation omitted). Courts have held that a reckless

indifference to the truth may satisfy the fraudulent intent element of a § 727(a)(4)(A) action.

6 COLLIER ON BANKRUPTCY ¶ 727.04 (16th 2024); *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*,

249 F.3d 380, 382 (5th Cir. 2001); *Kirchner v. Sticht (In re Sticht)*, No. 02-45979, 2005 Bankr.

LEXIS 2044, at *12, 2005 WL 6441384, at *3 (Bankr. N.D. Tex. Oct. 20, 2005) (citing cases).

34.     The Rutans home in on several statements in Johns's Schedules and Statement of

Financial Affairs that they allege justify denying his discharge under § 727(a)(4). The Court need

not address Johns's statements; the Rutans failed to provide evidence or argument on all the

elements of their charge—primarily, the requirement that the false statements or omissions be

material to the bankruptcy case.

35.     On materiality, the "issue is not merely the value of the omitted assets or whether

the omission was detrimental to creditors." *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992)

(citation omitted). The real focus is to determine if the false oath "bears a relationship to the

bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings,

or the existence and disposition of his property." *Id*. (quoting *In re Chalik*, 748 F.2d 616, 617

(11th Cir. 1984)). To add more context, the Fifth Circuit has held that a debtor's failure to list his

status as a trustee was not material "because this knowledge would not assist [debtor's] creditors." *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 568 (5th Cir. 2005).

36.     Here, the Rutans did not address how any false oaths made by Johns bear on business transactions or discovery of assets. Objections to discharge are strictly construed and present a large hurdle; the Court cannot conclude that the omissions were material without the moving party adequately addressing the issue.

**Johns's Credibility**

37.     "The bankruptcy code contains hundreds of interlocking rules about the relations between a debtor and [its] creditors. But beneath that complexity lies a simple bargain: A debtor can win a discharge of its debts if it proceeds with honesty and places virtually all its assets on the table for its creditors." *Harrington v. Purdue Pharma L.P.*, 603 U.S. ___, 144 S. Ct. 2071, 2077 (2024) (alteration in original) (internal quotation and citation omitted). Both the corporate debtor and the individual debtor are subjects of this bargain.

38.     Johns filed this chapter 7 bankruptcy case in response to the highly aggressive, and somewhat questionable, collection tactics employed by the Rutans. As the Court has previously noted, Johns's required Schedules of assets and liabilities and Statements of Financial Affairs reveal an individual that is virtually destitute. He makes $1,500 a month, a sum that is well short of his most basic living expenses. Despite this, he has a Roth IRA that he valued at $250,000. His total contribution—i.e., his funding of the IRA—was a total of $19,000, the aggregate amount he contributed from 2016 to 2018. He filed his bankruptcy case in February 2021. The Court incorporates its findings from the Rutans' and Trustee's objection to Johns's exemption of his IRA:

> Johns's tax returns for the three years he funded his IRA showed total income of $2,673 for 2016, $2,446 for 2017, and $2,738 for 2018. Nearly two years after filing

20

his bankruptcy petition, Johns filed amended tax returns on November 28, 2022. By his amended tax returns, Johns reported total income in the amounts of $9,173 for 2016, $8,946 for 2017, and $8,738 for 2018.

…

Johns's bankruptcy case is replete with red flags. How does a debtor that earns less than $3,000 a year make $19,000 in contributions to fund his self-directed Roth IRA? How does such $19,000 IRA turn into an IRA worth $250,000 (or perhaps, much more) within three years? How does a debtor satisfy his duty of candor and transparency in his bankruptcy when he has maintained no bank accounts or owned a credit card for over fourteen years? And how does a debtor conveniently fail to report income in the exact amount of the contributions made to his tax-exempt IRA? Johns failed to satisfactorily resolve these questions.

*In re Johns*, 658 B.R. 401, 404 & 432 (Bankr. N.D. Tex. 2024) (internal citations omitted),

*appeal docketed*, No. 6:24-cv-024-H (N.D. Tex. filed April 9, 2024).

39.     Johns testified at-length at both the exemption trial and the trial here. Here, although he was frustrated at times with the questions from the Rutans' counsel, he was never belligerent and never refused to answer any question. Johns did not volunteer information but was congenial and cooperative. Johns was not evasive here, though he did at times state that he did not know the answer to a question.

40.     Johns testified that all aspects of the complicated retirement and investment scheme of which his IRA is a part was orchestrated by Sheen. This makes sense—Sheen and his proxies contributed (or loaned?) the vast majority of the funds for the investments made by the Carswell Cherokee Trust and the Southeast Financial Trust. The evidence reveals that Johns contributed $19,000 and yet, this—coupled with his "bird dogging" expertise—equates to a 49% interest in Carswell Cherokee Trust and, through Southeast Financial Trust, a 49% interest in Amerifirst Portalet and Pump Service, LLC. The Sheens have a 51% interest in Carswell Cherokee Trust. The Sheens' IRAs contributed at least $550,000 to Carswell, and a trust (Giving Joy 10-2015 Trust) that benefits Sheen's son contributed about $260,000 to Amerifirst Portalet and Pump Service, LLC. Amerifirst is the entity through which Southeast Financial Trust (that

Johns's IRA owns 100%) makes its investments. Carswell and Amerifirst are the hubs for the various businesses and assets Johns's IRA invested in. Sheen ostensibly relies on Johns to find good deals and to then help manage the acquired assets. They all mostly involve real estate or businesses—porta potties and mobile homes—that generate regular cash flow. Given the nature of such businesses, the cash flow is volatile.

41.      Johns credibly testified that Sheen uses his (Johns's) name for properties held in land trusts. Johns testified that his name was, in effect, merely a label—a way to conceal *Sheen's* involvement. There is no evidence that Johns holds a substantive interest as a direct or indirect beneficiary of these trusts. This does not, however, wholly excuse his failure to disclose his role in his original Statement of Financial Affairs.

42.      Two entries in Johns's original Schedules stand out: first, his IRA, described as "IRA through Nuview" valued at $250,000; and second, his one listed creditor, Columbia Collectors Inc., as holding a "disputed" claim in the amount of $2,199,936. These two entries belie the otherwise pedestrian entries. And it is difficult to square this dichotomy. This bankruptcy case was filed as a way to stop the Rutans' overly aggressive collection efforts. But it did not work. It simply transferred the fight to the bankruptcy court.

43.      The Court is troubled by Johns's failure to maintain any *personal* financial records. But, as stated, Johns testified at length; neither Rutan nor Sheen appeared or testified. The Court relies principally on the testimony before the Court in forming its opinion. The *allegations* here are scattershot.

44.      The Court looks strictly to the elements of § 727(a)(2)(A), (B), (a)(3), and (a)(4) in light of the evidence presented. The Court is satisfied that Johns listed all his property, including his IRA. His disclosure of the IRA provided no information of *its* assets. But, as stated,

the listing was not technically deficient. The parties obviously have had a full airing of Johns's
IRA.

45.    Johns's initial failure to include the many trusts of which he is *named* trustee is
also troubling. But by his testimony, he has no interest in any properties identified by a trust
name and has no authority other than as directed by Sheen. There is no substance to his role.
Johns credibly testified that he was, and no doubt still is, a tool used by Sheen. Sheen is paying
Johns's attorney's fees here.

46.    Johns properly included his IRA in his bankruptcy Schedules and designated it as
exempt. From his initial disclosure, the Rutans and the Trustee were able to root through the
complicated details of his IRA. This includes his contributions of $19,000 and his IRA's interests
in the two trusts that ultimately made the investments that ostensibly benefit Johns's IRA. And,
more important, the Trustee and the Rutans successfully objected to Johns's exemption claim to
the IRA. The Court's ruling has been appealed. The Court concludes this resolved any objection
to discharge that is based on concerns regarding Johns's IRA.

47.    Although Johns explained that his $1,500 per month payment from Sheen was
supplemented by "reimbursements" he received from Sheen for business expenses that Johns
presumably fronted for Sheen, the Court is skeptical that all such payments are truly
reimbursements rather than additional income. But skepticism is not sufficient to deny Johns's
discharge.

48.    Despite the Court's concerns—expressed in its opinion on the exemption
objection—the Court finds that Johns did place his assets on the table and cooperated in his
appearances and testimony before the Court, thus satisfying his basic duties as a chapter 7 debtor.
The Court denies the Rutans' objections to discharge under § 727(a) of the Bankruptcy Code.

## CONCLUSION

The issues here raise mixed questions of fact and law. Accordingly, where appropriate, findings of fact may be considered conclusions of law and conclusions of law may be considered findings of fact.

The Rutans' objections to Johns's discharge under § 727(a) of the Bankruptcy Code will be denied.

### End of Findings of Fact and Conclusions of Law ###